# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v MAGNANT
PEOPLE v DAVIS

Docket Nos. 159371 and 159373. Argued on application for leave to appeal January 6, 2021. Decided July 30, 2021.

Gerald Magnant and John F. Davis were each charged with violating MCL 205.428(3) of the Tobacco Products Tax Act (the TPTA), MCL 205.421 *et seq*., for transporting 3,000 or more cigarettes without the transporter's license required by MCL 205.423(1). Defendants were nonsupervisory employees of the Keweenaw Bay Indian Community (KBIC). On December 11, 2015, the Michigan State Police pulled over a KBIC-owned pickup truck for speeding. The driver, Davis, consented to a search of the utility trailer attached to the truck, representing to the trooper that it contained "supplies" and "chips." The trailer actually contained 56 cases holding over 600,000 "Seneca" cigarettes marked with KBIC stamps but not with the Michigan Department of Treasury tax stamps required by the TPTA. The trooper told Davis, "[Y]ou knew that stuff was back there," to which Davis replied, "I'm just a worker." The truck's passenger, Magnant, admitted that he had helped load the trailer. The parties stipulated that Davis, Magnant, and the KBIC were not licensed to transport tobacco products under the TPTA. Davis and Magnant were each charged with violating MCL 205.428(3), and after a preliminary examination, the district court bound the case over as to each defendant. In the circuit court, defendants jointly moved to quash the bindover, arguing that MCL 205.428(3) required the prosecution to show that defendants knowingly violated the TPTA licensing requirement. Defendants also jointly moved to dismiss the charges, arguing that the relevant statutes are unconstitutionally vague because they do not give individual employees, as opposed to businesses, adequate notice that they are subject to the TPTA licensing requirement for transporting cigarettes. The Ingham Circuit Court, Louise Alderson, J., denied defendants' motion to quash the bindover, ruling that the prosecution need only show that defendants knowingly transported 3,000 or more cigarettes and that defendants were not licensed, irrespective of their knowledge of the licensing requirement. The circuit court also denied defendants' motion to dismiss, ruling that the language of the TPTA provided adequate notice that an "individual" can be a "transporter" subject to the licensing requirement. The Court of Appeals consolidated the cases on appeal. In an unpublished opinion issued on February 5, 2019 (Docket Nos. 341621 and 341627), the Court of Appeals, SWARTZLE, P.J., and SAWYER, J. (RONAYNE KRAUSE, J., dissenting), affirmed, holding that because MCL 205.428(3) is a general-intent offense, the only criminal intent the prosecution must show is the actor's knowledge that they possessed 3,000 or more cigarettes. The Court of Appeals also held that the TPTA provides

sufficient notice to individual employees that they must be licensed if they are "transporters" of tobacco products. Defendants each sought leave to appeal in the Supreme Court, and the Supreme Court ordered consolidated oral argument on the applications. 505 Mich 1000 (2020).

In an opinion by Justice WELCH, joined by Chief Justice MCCORMACK and Justices BERNSTEIN and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

MCL 205.428(3) of the Tobacco Products Tax Act, MCL 205.421 *et seq*., applies to nonsupervisory employees and is not unconstitutionally vague. MCL 205.428(3) requires the prosecution to show that defendants (1) knew they were transporting 3,000 or more cigarettes and (2) knew of facts that conferred "transporter" status or knew of the specific licensing requirement of MCL 205.423(1). In this case, the district court's bindover decision was invalid because the district court did not consider whether each defendant in this case knew facts that, at a minimum, bestowed transporter status on them.

1. MCL 205.428(3) provides, in relevant part, that a person who possesses, acquires, transports, or offers for sale contrary to the TPTA 3,000 or more cigarettes is guilty of a felony, punishable by a fine of not more than $50,000 or imprisonment for not more than five years, or both. MCL 205.423(1) provides, in relevant part, that a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a transporter in this state unless licensed to do so. MCL 205.422(y) defines "transporter" as a person importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under this act. MCL 205.422(y) also provides that a transporter does not include an interstate commerce carrier licensed by the Interstate Commerce Commission (the ICC) to carry commodities in interstate commerce or a licensee maintaining a warehouse or place of business outside of this state if the warehouse or place of business is licensed under this act. Furthermore, MCL 205.422(o) provides that a "person" is an individual, partnership, fiduciary, association, limited-liability company, corporation, or other legal entity. Therefore, an individual is a transporter if the individual is engaged in conduct described in MCL 205.422(y). The TPTA thus provides clear notice of when an individual, including a nonsupervisory employee, holds the status of "transporter" and, consequently, when the individual is subject to the licensing requirement of MCL 205.423(1). Accordingly, the Court of Appeals did not err by holding that MCL 205.428(3) applies to nonsupervisory employees and that the statute is not unconstitutionally vague. However, the Court of Appeals erred to the extent it held that an individual must have a personal transporter license any time the individual transports large quantities of tobacco. Under the plain language of MCL 205.422(y), an individual qualifies as a "transporter"—and thus is subject to the transporter licensing requirement of MCL 205.423(1)—only if the individual is transporting tobacco from "a source located outside this state" or "from any person not duly licensed under this act" and the individual is not an ICC licensee or an out-of-state licensee under the TPTA. It is not the quantity of tobacco transported but the source of the tobacco that confers "transporter" status and the transporter licensing requirement. Therefore, under the plain language of MCL 205.422(y), when an individual employee's source of tobacco is a duly licensed employer, the individual employee is not a "transporter" and does not need a personal transporter license.

2. There is a longstanding presumption, traceable to the common law, that unless otherwise stated in a statute, a Legislature intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct. In this case,

the Legislature did not intend MCL 205.428(3) to impose strict liability. However, the text of MCL 205.428(3) provides no express criminal-intent provision and, therefore, no express guidance as to what wrongful state of mind is required or which elements of the offense it must be directed toward. *Rehaif v United States*, 588 US at ___; 139 S Ct 2191 (2019), provided the appropriate framework for resolution of this issue. *Rehaif* held that, under a statute prohibiting undocumented immigrants from possessing firearms, the defendant's immigration status was the crucial element separating innocent from wrongful conduct. Similarly, status is the crucial element separating innocent from wrongful conduct under MCL 205.428(3) as charged in this case. Because the prosecution had to show that a person charged with violating MCL 205.428(3) knew the facts that made his or her conduct illegal, a violation of MCL 205.428(3) requires, at a minimum, proof that the actor knew facts that conferred a status that subjected him or her to the regulatory requirements of the TPTA. Because defendants were charged with acting as "transporters" and because there was no allegation that they fell into any other category of "person" under the TPTA, MCL 205.428(3) required the prosecution to show that defendants (1) knew they were transporting 3,000 or more cigarettes and (2) knew of facts that conferred "transporter" status or knew of the specific licensing requirement of MCL 205.423(1). Under MCL 205.422(y), an individual qualifies as a "transporter," and thus is subject to the licensing requirement, only if the individual is transporting tobacco from "a source located outside this state" or "from any person not duly licensed under this act" and the individual is not a licensed ICC carrier or an out-of-state licensee under the TPTA. These are the facts that confer transporter status and, therefore, the facts that an individual must know to be liable for violating MCL 205.428(3). This holding does not require a showing that defendants were aware of the particular statutes that applied to their conduct or, specifically, that they were required to be licensed, although either would be sufficient to establish that defendants knew facts that made their conduct unlawful. Rather, this holding requires a minimal showing that defendants knew that they were transporting a tobacco product obtained from a source located outside this state or from a person not duly licensed under the TPTA. In this case, the district court bound defendants over but did not consider whether each defendant knew facts that, at a minimum, bestowed transporter status on them. A bindover decision is invalid unless it is supported by evidence as to each element of the charged offense. Therefore, Part II(A) of the Court of Appeals judgment was reversed, and defendants' joint motion to quash the district court's bindover decision was granted.

Court of Appeals judgment affirmed to the extent it held that MCL 205.428(3) applies to nonsupervisory employees and is not unconstitutionally vague, Court of Appeals judgment reversed to the extent it upheld the district court's bindover decision, and defendants' joint motion to quash the district court's bindover decision granted.

Justice CAVANAGH, concurring in the result, agreed with the Court's decision to affirm in part and reverse in part the judgment of the Court of Appeals and quash the district court's bindover decision; however, because the parties agreed that the *mens rea* of "knowingly" applied to each element of the offense, she would have resolved the matter on that basis and held that a violation of MCL 205.428(3) requires proof that the actor knew that his or her conduct violated the TPTA. She agreed with Justice ZAHRA that the language "contrary to [the TPTA]" in MCL 205.428(3) constituted an element of the offense, but she disagreed with Justice ZAHRA that a proper interpretation of MCL 205.428(3) required substituting language from elsewhere in the TPTA. The language "contrary to [the TPTA]" incorporates the regulatory scheme so that if a person knowingly possesses, acquires, transports, or offers for sale 3,000 or more cigarettes in any way

that violates the TPTA, that person is guilty of a felony under MCL 205.428(3). But the lack of a license is not the only way in which cigarettes may be possessed, acquired, transported, or offered for sale contrary to the TPTA; the TPTA is a complicated regulatory scheme, and there are many ways to run afoul of it. Accordingly, Justice CAVANAGH concurred in the majority's result.

Justice ZAHRA, dissenting, disagreed with the Court's decision to reverse Part II(A) of the judgment of the Court of Appeals and quash the district court's bindover decision; he would have affirmed the Court of Appeals' decision and remanded to the circuit court for further proceedings. The "contrary to [the TPTA]" language in MCL 205.428(3) had a purpose: it referred to a license. Given this language, in addition to proving the first and third express elements of MCL 205.428(3), the prosecution also had to prove that the defendant was acting contrary to a separate provision of the TPTA. MCL 205.422(y), which defines "transporter," in no way created a status on its own, as the majority suggested. By its plain terms, MCL 205.422(y) describes conduct in which a person who has a transporter license may lawfully engage. But a person who has never sought a transporter license does not spontaneously become a "transporter" by engaging in this described conduct, which is unlawful without having first acquired a license. And because defendants in this case never sought or acquired a license, the majority's argument lacked the requisite legal foundation to draw a comparison between this case and *Rehaif*. Further, the majority improperly construed the phrase "contrary to" as requiring the prosecution to establish that defendants knew of "status" facts that would apparently prompt a person to be aware that a transporter license is required. The majority essentially requires the prosecution to establish, in regard to the second element, a "willful" violation of MCL 205.428(3), but nothing in the text of MCL 205.428(3) or any common-law presumption of criminal *mens rea* justified this conclusion. Accordingly, Justice ZAHRA would have affirmed the Court of Appeals judgment and remanded this case to the circuit court.

Justice VIVIANO, dissenting, agreed with the majority's construction of the elements of MCL 205.428(3) and agreed that this statutory crime is not a strict-liability offense, but he disagreed that a *mens rea* requirement attaches to the disputed element requiring a license to transport cigarettes in certain circumstances. Justice VIVIANO would have concluded that the presumption in favor of applying a *mens rea* requirement to each element has been overcome and that the Legislature did not intend to require knowledge of the attendant circumstances set forth in the definition of transporter, i.e., whether the tobacco is obtained from an out-of-state or unlicensed source. MCL 205.428(3) contains no express *mens rea* requirement and is not a codification of any common-law offense to which a *mens rea* requirement would normally attach. It is, instead, a regulatory tax statute, and when regulated persons or entities fail to comply with that type of statute, they usually do so at their own peril. Although the offense, as a whole, is not one of strict liability, the transporter element is regulatory in nature, and requiring the prosecution to prove knowledge with regard to this element would be nearly impossible. Accordingly, Justice VIVIANO would have held that MCL 205.428(3) does not require the prosecution to prove knowledge of the circumstances that make a person a "transporter."

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED July 30, 2021

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                              No. 159371

GERALD MAGNANT,

Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                              No. 159373

JOHN FRANCIS DAVIS,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WELCH, J.

This case involves the interpretation and application of the Tobacco Products Tax Act (the TPTA), MCL 205.421 *et seq*. Defendants were charged with violating the TPTA because they did not have a license to transport cigarettes. The issue in this case is whether the TPTA's licensing requirement for a "person" who is a "transporter" of tobacco applies to a nonsupervisory employee of an unlicensed entity that transports tobacco. If we find that an individual license is required under the TPTA, we then must determine how criminal intent applies to the TPTA licensing requirements in order to hold such an employee criminally responsible under MCL 205.428(3).

We hold that an individual employee is a "transporter," who must be licensed to transport a regulated quantity of tobacco in Michigan, when (a) the tobacco is obtained from an out-of-state source or from a source not duly licensed under the TPTA, and (b) the individual is not licensed by the Interstate Commerce Commission (the ICC) or an out-of-state operator of a business or warehouse licensed under the TPTA. MCL 205.422(y); MCL 205.423(1). An individual employee who takes possession of tobacco from her or his duly licensed (as provided by the TPTA) employer is not a "transporter" and does not need a personal transporter license. MCL 205.422(y).

We further hold that while an individual acting as a "transporter" need not have specific awareness of the law that creates the licensing requirement, a conviction for violating MCL 205.428(3) must, at a minimum, be supported by a showing that the individual (1) knew he or she was transporting a regulated amount of cigarettes and (2) knew of facts that conferred "transporter" status upon him or her. This knowledge-of-status requirement is satisfied when the person is aware that the cigarettes were obtained from an out-of-state source or from a source not duly licensed under the TPTA. In this

2

case, the prosecution failed to present any evidence establishing or implying that defendants were aware of facts that conferred transporter status on them. Accordingly, we affirm in part and reverse in part the opinion of the Court of Appeals and grant defendants' joint motion to quash the district court's bindover decision.

## I. FACTS AND PROCEDURAL HISTORY

Defendants Gerald Magnant and John Francis Davis were nonsupervisory employees of the Keweenaw Bay Indian Community (KBIC). The KBIC, a federally recognized Native American tribe, has previously challenged the state of Michigan's authority to tax tobacco products sold by the tribe to nontribal consumers. See *Keweenaw Bay Indian Community v Rising*, 477 F 3d 881 (CA 6, 2007). On December 11, 2015, the Michigan State Police pulled over a KBIC-owned pickup truck for speeding on US Highway 41. The traffic stop was captured on video. The driver, defendant Davis, consented to a search of the utility trailer attached to the truck, representing to the trooper that it contained "supplies" and "chips." The trailer actually contained 56 cases holding over 600,000 "Seneca" cigarettes marked with KBIC stamps but not with the Michigan Department of Treasury tax stamps required by the TPTA. The trooper told Davis, "[Y]ou knew that stuff was back there," to which Davis replied, "I'm just a worker." The truck's passenger, defendant Magnant, admitted that he had helped load the trailer. The parties have stipulated that Davis, Magnant, and the KBIC were not licensed to transport tobacco products under the TPTA.

Davis and Magnant were each charged with violating MCL 205.428(3) for transporting 3,000 or more cigarettes without the transporter's license required by

3

MCL 205.423(1). After a preliminary examination, the district court bound the case over as to each defendant. In the circuit court, defendants jointly moved to quash the bindover, arguing that MCL 205.428(3) required the prosecution to show that defendants knowingly violated the TPTA licensing requirement. Defendants also jointly moved to dismiss the charges, arguing that the relevant statutes are unconstitutionally vague because they do not give individual employees, as opposed to businesses, adequate notice that they are subject to the TPTA licensing requirement for transporting cigarettes.

The circuit court denied defendants' motion to quash the bindover, ruling that the prosecution need only show that defendants knowingly transported 3,000 or more cigarettes and that defendants were not licensed, irrespective of their knowledge of the licensing requirement. The circuit court also denied defendants' motion to dismiss, ruling that the language of the TPTA provided adequate notice that an "individual" can be a "transporter" subject to the licensing requirement.

The Court of Appeals consolidated defendants' cases on appeal and affirmed in a split, unpublished opinion. The majority held that (1) because MCL 205.428(3) is a general-intent offense, the only criminal intent the prosecution must show is the actor's knowledge that they possessed 3,000 or more cigarettes, and (2) the TPTA provides sufficient notice to individual employees that they must be licensed if they are "transporters" of tobacco products. *People v Davis*, unpublished per curiam opinion of the Court of Appeals, issued February 5, 2019 (Docket Nos. 341621 and 341627), pp 4, 7. Judge RONAYNE KRAUSE dissented, opining that the TPTA's licensing requirement did not apply to low-level, nonsupervisory employees like defendants. *Id*. (RONAYNE KRAUSE, J., dissenting) at 5. She opined that even if the licensing requirement did apply

4

to nonsupervisory employees, the prosecution had the burden to show that defendants knew "both that they were transporting cigarettes, and at least generally that they were doing so in violation of the TPTA." *Id*. at 8.

Defendants each sought leave to appeal, and this Court ordered consolidated oral argument on the applications. *People v Magnant*, 505 Mich 1000 (2020). We directed the parties to address "(1) whether MCL 205.428(3) requires proof that the defendants knew that they were transporting cigarettes in a manner 'contrary to' [the TPTA]; (2) whether nonsupervisory employees fall within the definition of 'transporter' under MCL 205.422(y); and (3) if so, whether the TPTA's definition of 'transporter' satisfies due process by putting the defendants on fair notice of the conduct that would subject them to punishment." *Id*. (citations omitted).

## II. STANDARD OF REVIEW

A district court's bindover decision must be supported by probable cause to believe that the defendant committed a felony. *People v Shami*, 501 Mich 243, 250; 912 NW2d 526 (2018). This requires evidence as to each element of the charged offense that would "cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. at 250-251 (quotation marks and citation omitted). This Court reviews a district court's bindover decision for an abuse of discretion, which occurs when the district court's decision falls outside the range of principled outcomes. *Id*. at 251. "To the extent the lower court's ruling is based on questions of law, however, it is reviewed de novo." *People v Hall*, 499 Mich 446, 451-452; 884 NW2d 561 (2016). "Questions of

5

constitutional and statutory interpretation present questions of law reviewed de novo." *Id*. at 452.

## III. STATUTORY TEXT

The Legislature enacted the TPTA "to provide for a tax upon the sale and distribution of tobacco products; to regulate and license manufacturers, wholesalers, secondary wholesalers, vending machine operators, unclassified acquirers, transportation companies, transporters, and retailers of tobacco products; . . . [and] to prescribe penalties and provide remedies for the violation of this act[.]" 1993 PA 327, title. The TPTA "is at its heart a revenue statute, designed to assure that tobacco taxes levied in support of Michigan schools are not evaded." *People v Nasir*, 255 Mich App 38, 42; 662 NW2d 29 (2003). This Court's goal in interpreting a statute is to effectuate the Legislature's intent. *Shami*, 501 Mich at 253.

Defendants were charged with violating a criminal provision of the TPTA, which provides, in relevant part:

> A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes . . . is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both. [MCL 205.428(3).]

The prosecution alleges that defendants acted "contrary to" the TPTA because they violated MCL 205.423(1), which provides, in relevant part, "[A] person shall not purchase, possess, acquire for resale, or sell a tobacco product as a . . . transporter in this state unless licensed to do so." The TPTA defines a "transporter" as follows:

> "Transporter" means a person importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under this act.

6

Transporter does not include an interstate commerce carrier licensed by the [ICC] to carry commodities in interstate commerce, or a licensee maintaining a warehouse or place of business outside of this state if the warehouse or place of business is licensed under this act. [MCL 205.422(y).]

## IV. APPLICATION TO INDIVIDUAL EMPLOYEES

Defendants argue that the "transporter" licensing requirement of MCL 205.423(1) does not apply to nonsupervisory employees of a business or other entity that transports tobacco. Alternatively, defendants argue that if the licensing requirement does apply to nonsupervisory employees, the TPTA is unconstitutionally vague for not providing sufficient notice of when an employee must obtain a personal transporter license to transport tobacco for their employer. We disagree on both points.

The Due Process Clauses of the United States and Michigan Constitutions require a criminal statute to provide fair notice "of the conduct that will subject [a person] to punishment" and "the severity of the penalty that a State may impose." *Hall*, 499 Mich at 460-461 (quotation marks and citation omitted). The inquiry is whether the "statute gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, and also whether the statute provides an explicit standard for those who apply it." *People v Harris*, 495 Mich 120, 134; 845 NW2d 477 (2014).

Under MCL 205.422(y), the term "transporter" includes a "person . . . transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under" the TPTA. In turn, MCL 205.422(o) provides that a "person" is "*an individual*, partnership, fiduciary, association, limited liability company, corporation, or other legal entity." (Emphasis added.) Therefore, with express exceptions

7

not relevant here,[1] "an individual" is a "transporter" if the individual is engaged in conduct described in MCL 205.422(y). There are no modifiers attached to the term "individual" that indicate exclusion of nonsupervisory employees. MCL 205.422(o). The TPTA thus provides clear notice of when an individual, including a nonsupervisory employee, holds the status of "transporter" and, consequently, when the individual is subject to the licensing requirement of MCL 205.423(1). Therefore, the Court of Appeals majority did not err by holding that MCL 205.428(3) applies to nonsupervisory employees and that the statute is not unconstitutionally vague.

The Court of Appeals dissent opined that the Legislature did not intend the definition of "transporter" to apply to low-level employees of a company transporting tobacco products. The dissent relied on *People v Assy*, 316 Mich App 302, 310-311; 891 NW2d 280 (2016), in which the Court of Appeals determined that the TPTA's definition of "retailer" was only intended to apply to "individuals with some degree of meaningful control over the operation." *Davis* (RONAYNE KRAUSE, J., dissenting), unpub op at 4. However, the *Assy* panel's conclusion was predicated upon the unique definition of "retailer"—"a person other than a transportation company who *operates a place of business* for the purpose of making sales of a tobacco product at retail." MCL 205.422(q) (emphasis added). The *Assy* panel reasoned, "[I]n ordinary speech, one does not normally refer to a cashier or stocker as the operator of a business." *Assy*, 316 Mich App at 310. Therefore, the panel concluded that the Legislature's use of the phrase "operates a place of business" means "that the person or entity who actually directs or manages the day-to-day operations

---

[1] The definition of "transporter" excludes persons licensed by the ICC and persons who maintain a TPTA-licensed out-of-state warehouse or place of business. MCL 205.422(y).

8

is the party responsible for ensuring compliance with the [TPTA]." *Id.* at 311. There is no analogous language in the definition of "transporter" to indicate that a "person" must "operate[] a place of business" or operate the company that is transporting cigarettes for the definition to apply. MCL 205.422(y).

Yet the Court of Appeals majority also held that an individual employee must have a personal transporter license any time she or he transports 3,000 or more cigarettes, even for a licensed employer. *Davis*, unpub op at 6 ("Thus, the statutory language of MCL 205.423(1) and MCL 205.428(3) makes clear that an individual possessing 3,000 or more cigarettes for transport, without having a license to do so, is guilty of a felony."). At the preliminary examination, Angela Littlejohn, the manager of the Department of Treasury's Tobacco Tax Unit, and Doug Miller, the department's administrator of special taxes, testified that, under the TPTA, an employee would not need their own transporter license when transporting tobacco within Michigan for a licensed employer. *Id.* at 6-7. The Court of Appeals majority noted that "departmental interpretations of statutes, although entitled to respectful consideration, are not binding on [the Court of Appeals]." *Id.* at 7. The majority held that "the plain language of the statute indicates that an individual violates the TPTA by possessing for transport large quantities of tobacco without a license." *Id.* It added, "[E]ven if the department's interpretations are credited, the statute makes clear that *someone*—either the individual or the individual's employer—must have a license authorizing the possession for transport of a large quantity of tobacco." *Id.* Therefore, the majority concluded that the statute was not unconstitutionally vague.

We clarify that only the Court of Appeals majority's alternative holding is correct as to this issue. The majority erred to the extent it held that an individual must have a

personal transporter license any time the individual "transport[s] large quantities of tobacco . . . ." *Id.* Under the plain language of MCL 205.422(y), an individual qualifies as a "transporter"—and thus is subject to the transporter licensing requirement of MCL 205.423(1)—only if the individual is transporting tobacco from "a source located outside this state" or "from any person not duly licensed under this act" and the individual is not an ICC licensee or an out-of-state licensee under the TPTA. It is not the quantity of tobacco transported but the source of the tobacco that confers "transporter" status and the transporter licensing requirement. Therefore, under the plain language of MCL 205.422(y), when an individual employee's source of tobacco is a duly licensed employer, the individual employee is not a "transporter" and does not need a personal transporter license.

## V. CRIMINAL INTENT

We next address the criminal intent that must be established to hold an individual liable under MCL 205.428(3). Defendants argue that MCL 205.428(3) requires the prosecution to show not only that defendants knew they were transporting 3,000 or more cigarettes, but also that defendants knew they were transporting cigarettes "contrary to [the TPTA] . . . ." In other words, defendants argue that there must be evidence that defendants knew of the transporter licensing requirement under MCL 205.423(1). The prosecution responds that because MCL 205.428(3) does not expressly provide a criminal-intent element, it is a general-intent offense that only requires a showing that defendants "inten[ded] to do the illegal act . . . ." *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013). In this case, the prosecution argues that transporting 3,000 or more cigarettes

10

is the only "illegal act" a defendant must intentionally commit to violate the statute. Because "ignorance of the law is no defense," the prosecution claims that it is not required to show that defendants knew of the licensing requirement. Neither party is entirely correct.

## A. THE PRESUMPTION OF A CRIMINAL-INTENT REQUIREMENT

To review, MCL 205.428(3) provides, in relevant part:

> A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes . . . is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both.

We start with the "longstanding presumption, traceable to the common law," that unless otherwise stated in a statute, a Legislature "intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v United States*, 588 US ___, ___; 139 S Ct 2191, 2195; 204 L Ed 2d 594 (2019) (quotation marks and citation omitted); *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005) (holding that the presumption applies to acts of the Michigan Legislature). We agree with the parties that the Legislature did not intend MCL 205.428(3) to impose strict liability. However, the text of the statute provides no express criminal-intent provision and, therefore, no express guidance as to what wrongful state of mind is required or which elements of the offense it must be directed toward.[2]

---

[2] MCL 205.428(11), which was added to the TPTA by 2008 PA 458, criminalizes the conduct of a person who "knowingly" transports 600 to 1,199 cigarettes contrary to the TPTA. But very similar provisions dealing with lower amounts of cigarettes, MCL 205.428(12) (less than 600 cigarettes), and higher amounts, MCL 205.428(4) (1,200 to 2,999 cigarettes), like MCL 205.428(3), do not contain the word "knowingly." It is

11

# 1. THE COURT OF APPEALS' ANALYSIS

The Court of Appeals majority followed the path urged by the prosecution. See *Davis*, unpub op at 3-6. Applying the rule of *Janes*, 302 Mich App at 41, the Court of Appeals stated that " '[c]riminal intent can be one of two types: the intent to do the illegal act alone (general criminal intent) or an act done with some intent beyond the doing of the act itself (specific criminal intent).' " *Davis*, unpub op at 3. The majority then looked to *Nasir*, 255 Mich App 38, to determine that MCL 205.428(3) is a general-intent offense that only requires intent to do the illegal act. *Davis*, unpub op at 3-6. In *Nasir*, the Court of Appeals addressed the criminal-intent element of MCL 205.428(6), which provides, in relevant part:

> A person who manufactures, possesses, or uses a stamp or manufactures, possesses, or uses a counterfeit stamp or writing or device intended to replicate a stamp without authorization of the department . . . is guilty of a felony . . . .

The *Nasir* panel determined that the statute created a general-intent offense that required the prosecution to prove

> (1) the defendant possessed or used (2) a counterfeit stamp, or a writing or device intended to replicate a stamp, (3) that the defendant possessed or used the counterfeit tax stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp, and (4) that the defendant acted without authorization of the Michigan Department of Treasury. [*Nasir*, 255 Mich App at 46.]

---

possible that the Legislature intended to differentiate the criminal intent required for possession or transport of 600 to 1,199 cigarettes from that required for any other amount. But we cannot identify the presence of any "policy underlying such a construction" that is "so obvious [or] so compelling that we must assume, in the absence of any discussion of this issue in the legislative history, that [the Legislature] *did* enact such a statute." *Liparota v United States*, 471 US 419, 430; 105 S Ct 2084; 85 L Ed 2d 434 (1985).

The *Nasir* panel continued, "We do not believe that the Legislature intended that the offense contain a specific intent element, nor do we believe that a defendant need act with knowledge that the defendant does so without the authorization of the Michigan Department of Treasury." *Id*.

The Court of Appeals majority in the present case purported to apply the reasoning of *Nasir* to MCL 205.428(3):

> "Indeed, this Court in *Nasir* explicitly rejected the proposition that the offense in MCL 205.428(6) contained a specific intent element and concluded that the prosecutor did not have to prove that the defendant knew that he lacked the authorization of the Michigan Department of Treasury. *Nasir*, 255 Mich App at 46. Accordingly, defendant's suggestion below that *Nasir* should be read to require proof in this case that defendant knew he was required to have a license to transport tobacco products and that he specifically intended to violate the TPTA is utterly without any support from the holding in *Nasir*, in addition to lacking any basis in the language of MCL 205.428(3)." [*Davis*, unpub op at 5, quoting *People v Shouman*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2016 (Docket No. 330383), p 6.]

In short, the Court of Appeals majority relied on the distinction between general-intent and specific-intent offenses to determine that because MCL 205.428(3) lacks an express specific-intent element, the only criminal intent the statute requires is a defendant's knowledge that he or she is transporting 3,000 or more cigarettes. *Davis*, unpub op at 5.

## 2. THE CRIMINAL-INTENT PRESUMPTION AND THE GENERAL-INTENT/SPECIFIC-INTENT DISTINCTION

We are mindful, however, of the United States Supreme Court's warning of the dangers posed by overreliance on the general-intent/specific-intent distinction. See *United States v Bailey*, 444 US 394, 403; 100 S Ct 624; 62 L Ed 2d 575 (1980) ("At common law, crimes generally were classified as requiring either 'general intent' or 'specific intent.'

13

This venerable distinction, however, has been the source of a good deal of confusion."). The problem is that "even time-honored common-law crimes consist of several elements, and complex statutorily defined crimes exhibit this characteristic to an even greater degree." *Id*. at 405. The conclusion that a statute requires proof of "intent to do the illegal act alone (general criminal intent)" but not "some intent beyond the doing of the act itself (specific criminal intent)," *Janes*, 302 Mich App at 41, does not settle which elements of a complex offense are part of the "criminal act." The Model Penal Code, § 2.02(4) presumes that, in the absence of an express legislative statement to the contrary, criminal intent must be established as to each material element of the offense. *Bailey*, 444 US at 406. However, *Bailey* instructs that mechanical application of that presumption, like mechanical application of the general-intent/specific-intent distinction, might override legislative intent. *Id*. at 406-407. No bright-line categorical rule can substitute for careful analysis of the statute's purpose and context. *Id*.

### 3. CRIMINAL INTENT AS KNOWLEDGE OF FACTS THAT MAKE CONDUCT ILLEGAL

Defendants are accused of committing an offense that consists of one simple voluntary act (transporting over 3,000 cigarettes), but that act has complicated attendant circumstances (a licensing requirement dependent on complex definitions of "transporter" and "person"). Under such a statute, an actor's intent to perform the voluntary act might not constitute *criminal* intent at all if the act is only criminal because of attendant circumstances of which the actor is unaware. *Staples v United States*, 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994), is instructive on this point. *Staples* concerned a federal statute that prohibited possession of an automatic firearm but contained no express

14

criminal-intent provision. *Id*. at 605. The trial court ruled that knowledge of possessing a firearm was required but knowledge that the firearm was automatic was not required. *Id*. at 604. The United States Supreme Court reversed and held that the prosecution must prove that the defendant knew his weapon was automatic because the criminal-intent presumption required the defendant to "know the facts that make his conduct illegal." *Id*. at 605; see also *United States v X-Citement Video, Inc*, 513 US 64, 72; 115 S Ct 464; 130 L Ed 2d 372 (1994) ("[T]he presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."). The Court explained, "[W]e essentially have relied on the nature of the statute and the particular character of the items regulated to determine whether congressional silence concerning the mental element of the offense should be interpreted as dispensing with conventional *mens rea* requirements." *Staples*, 511 US at 607. The Court reasoned that firearms in general are not of the same class as hand grenades and narcotics. *Id*. at 608-610. Firearms, although dangerous, are commonplace and often possessed lawfully, whereas "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Id*. at 609 (quotation marks and citation omitted). The Court explained:

> But that an item is "dangerous," in some general sense, does not necessarily suggest, as the Government seems to assume, that it is not also entirely innocent. Even dangerous items can, in some cases, be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation. As suggested above, despite their potential for harm, guns generally can be owned in perfect innocence. [*Id*. at 611.]

Cigarettes, like firearms, are commonplace and often possessed lawfully, unlike hand grenades and dangerous narcotics. For this reason, we follow *Staples* in distinguishing *United States v Balint*, 258 US 250; 42 S Ct 301; 66 L Ed 604 (1922)

15

(holding that a defendant need not specifically know that opium and cocaine are strictly regulated to be liable for selling them), and *United States v Freed*, 401 US 601; 91 S Ct 1112; 28 L Ed 2d 356 (1971) (holding that a defendant need not know that unregistered hand grenades are unregistered to be liable for possessing them).[3] Indeed, an individual may lawfully possess large quantities of cigarettes in their own home for personal use without triggering the licensing requirement of MCL 205.423(1). Similarly, 3,000 or more cigarettes may be transported lawfully under the TPTA if the transporter is licensed. Because it is not the act of transporting 3,000 or more cigarettes alone that makes an actor's conduct lawful or unlawful under MCL 205.428(3), an actor's knowledge of the fact that he or she is transporting 3,000 or more cigarettes—taken alone, without reference to the actor's knowledge of the licensing requirement or of the actor's transporter status—is insufficient to establish that the actor "[knew] the facts that make his conduct illegal." *Staples*, 511 US at 605. Therefore, the Court of Appeals majority's interpretation of MCL 205.428(3) is inconsistent with the presumption that the Legislature intended to impose a criminal-intent requirement.

---

[3] Justice VIVIANO, like the prosecution in *Staples*, opines that "this case fits in a line of precedent concerning what [the United States Supreme Court has] termed 'public welfare' or 'regulatory' offenses, in which we have understood Congress to impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Staples*, 511 US at 606. Again, we follow *Staples* in noting that "the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary." *Id*. at 616. We believe that "[t]he potentially harsh penalty attached to violation" of MCL 205.428(3)—$50,000 in fines or up to 5 years' imprisonment—"confirms our reading of the Act." *Id*.

The Court of Appeals majority overlooked a crucial aspect of the *Nasir* decision regarding counterfeit stamps under the TPTA. *Nasir* did not hold that because MCL 205.428(6) is a general-intent crime, the prosecution must only show that the defendant knowingly used a stamp that, known or not to the defendant, happened to be counterfeit. Rather, *Nasir* held that the existence of general intent to do the illegal act required the defendant to know that he was using a stamp *and that the stamp was counterfeit*. *Nasir*, 255 Mich App at 45-46. The counterfeit nature of the stamp is what makes its use illegal. Therefore, the actor must know that fact in order to intend the illegal act. *Id*.; *Staples*, 511 US at 605.

## 4. KNOWLEDGE-OF-THE-LAW REQUIREMENT

The requirement that an actor must "know the facts that make his conduct illegal" does not, as defendants argue in this case, mean that the actor must know the specific law that makes his conduct illegal. Defendants point to *Liparota v United States*, 471 US 419, 423; 105 S Ct 2084; 85 L Ed 2d 434 (1985), in which the United States Supreme Court interpreted the criminal-intent requirement of a federal prohibition against the acquisition, possession, or use of food stamps "in a manner not authorized by statute or regulations." The government argued that the offense had no criminal-intent requirement. *Id*. The petitioner argued that the government had to prove that he knowingly acted in "a manner not authorized by statute or regulations." *Id*. The Supreme Court held that the petitioner's construction—that the defendant must know he or she is violating the law—was "particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a *broad range of apparently innocent conduct*." *Id*. at 426 (emphasis added).

17

The Court reasoned that the lack of a knowledge-of-the-law requirement would make a criminal of a "food stamp recipient who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp program participants." *Id*. The Court added, "Such a reading would also render criminal a nonrecipient of food stamps who 'possessed' stamps because he was mistakenly sent them through the mail due to administrative error, 'altered' them by tearing them up, and 'transferred' them by throwing them away." *Id*. at 426-427.

Unlike the statute at issue in *Liparota*, the statute in this matter, MCL 205.428(3), does not "criminalize a *broad range* of apparently innocent conduct" without a knowledge-of-the-law requirement. The range of conduct that involves possessing, acquiring, transporting, or offering for sale 3,000 or more cigarettes under certain attendant circumstances is extraordinarily narrow compared to the range of acts that involve possession, use, or acquisition of food stamps. Therefore, *Liparota* does not support the conclusion that the Legislature intended to include a knowledge-of-the-law requirement with respect to MCL 205.428(3).

## 5. KNOWLEDGE-OF-STATUS REQUIREMENT

Given the presumption that a defendant must "know the facts that make his conduct illegal," *Staples*, 511 US at 605, we cannot conclude that the Legislature intended MCL 205.428(3) to create an offense that is only one small step (knowledge of transporting cigarettes) away from strict liability. The prosecution admits that under its proposed construction, an employee who reasonably relies on an employer's misrepresentation that a particular act of transporting cigarettes does not require a license would be guilty of a

18

felony. In other words, such an employee would be a felon for relying on his employer's representations rather than personally investigating applicable licensing requirements. We cannot conclude that the Legislature intended to impose upon such apparently innocent conduct the "infamy" of the term "felony," which is "as bad a word as you can give to man or thing." *Morissette v United States*, 342 US 246, 260; 72 S Ct 240; 96 L Ed 288 (1952) (quotation marks and citation omitted); see also *Staples*, 511 US at 620 ("[I]f Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, . . . it would have spoken more clearly to that effect.").

Instead, we think that *Rehaif*, 588 US ___; 139 S Ct 2191, provides the appropriate framework for this case. In *Rehaif*, the United States Supreme Court applied the criminal-intent presumption to the federal prohibition on the possession of firearms by undocumented immigrants. *Id*. at ___; 139 S Ct at 2194. The petitioner, who was attending a university on a nonimmigrant student visa, was expelled for poor grades and told that his immigration status would be terminated unless he enrolled in a different university or left the country. *Id*. at ___; 139 S Ct at 2194. Around that time, he used firearms at a shooting range and was arrested for possessing firearms as an undocumented immigrant. *Id*. at ___; 139 S Ct at 2194. The government argued that criminal intent could be established solely by the petitioner's knowledge that he possessed a firearm. *Id*. at ___; 139 S Ct at 2194-2195. The Supreme Court disagreed, reasoning that "the defendant's [immigration] status is the crucial element separating innocent from wrongful conduct." *Id*. at___; 139 S Ct at 2197 (quotation marks and citation omitted). Therefore, the Court held, the criminal-intent presumption required the government to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id*. at ___;

19

139 S Ct at 2194. The Court explained that a knowledge-of-status requirement is not a knowledge-of-the-law requirement:

> *This maxim [that "ignorance of the law is no excuse"], however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be unaware of the existence of a statute proscribing his conduct.* In contrast, the maxim does not normally apply where a defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense. [*Id.* at ___; 139 S Ct at 2198 (quotation marks and citations omitted; emphasis added).]

### B. APPLICATION OF THE CRIMINAL-INTENT PRESUMPTION TO MCL 205.428(3)

In this case, each defendant is charged with being "[a] person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes . . . ." MCL 205.428(3). Specifically, defendants are charged with acting contrary to the TPTA because they lacked the license required by MCL 205.423(1). The licensing requirement of MCL 205.423(1) applies to a "person" acting as "a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state . . . ." Therefore, whether a person has violated the licensing requirement, thereby acting "contrary to this act" for purposes of MCL 205.428(3), *depends upon the person's status* as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter. In short, "the defendant's status is the crucial element separating innocent from wrongful conduct." *Rehaif*, 588 US at ___; 139 S Ct at 2197 (quotation marks and citation omitted). As we must presume that the Legislature intended a felony conviction to be supported by

20

a showing of criminal intent, the prosecution must show that a person charged with violating MCL 205.428(3) "[knew] the facts that make his conduct illegal," *Staples*, 511 US at 605. A violation of MCL 205.428(3) requires, at a minimum, proof that the actor knew facts that conferred a status that subjected him to the regulatory requirements of the TPTA. Because defendants were charged with acting as "transporters" and because there is no allegation that they fell into any other category of "person" under the TPTA, we hold that MCL 205.428(3) requires the prosecution to show that defendants (1) knew they were transporting 3,000 or more cigarettes and (2) knew of facts that conferred "transporter" status or knew of the specific licensing requirement of MCL 205.423(1).

Under MCL 205.422(y), an individual qualifies as a "transporter," and thus is subject to the licensing requirement, only if the individual is transporting tobacco from "a source located outside this state" or "from any person not duly licensed under this act" and the individual is not a licensed interstate commerce carrier or an out-of-state licensee under the TPTA. These are the facts that confer transporter status and, therefore, the facts that an individual must know to be liable for violating MCL 205.428(3).

Our holding does not require a showing that defendants were aware of the particular statutes that applied to their conduct or, specifically, that they were required to be licensed, although either would be *sufficient* to establish that defendants knew facts that made their conduct unlawful. Rather, our holding requires a minimal showing that defendants knew that they were transporting a tobacco product obtained from a source located outside this state or from a person not duly licensed under the TPTA—facts that would alert a reasonable person to the "likelihood of strict regulation." *Staples*, 511 US at 611. Our holding "depends upon a commonsense evaluation of . . . the expectations that individuals

21

may legitimately have in dealing with the regulated items." *Id*. at 619; see also *X-Citement Video*, 513 US at 73 ("[O]ne would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene, materials involving adults. Therefore, the age of the performers is the crucial element separating legal innocence from wrongful conduct."). A reasonable person would expect to be subject to regulation when transporting 3,000 or more cigarettes across state lines or from an unlicensed source.

The dissenting justices opine that our construction of MCL 205.428(3) frustrates the purpose of the statute. We disagree that our holding makes the offense impossible to enforce or that it places an "oppressive burden" on the prosecution. *Nasir*, 255 Mich App at 45. As is the case with all criminal offenses, "minimal circumstantial evidence is sufficient to establish a defendant's state of mind." *Id*. (quotation marks and citation omitted). Whether a defendant knew facts that conferred transporter status may be established by showing that the defendant was aware that his or her cigarette source was from outside the state or that the source did not have the proper license. A defendant's knowledge that cigarettes came from an out-of-state source can be shown quite simply through testimony or documentary evidence that the defendant left Michigan to obtain the cigarettes. A defendant's knowledge that her or his source is not duly licensed can be shown circumstantially by constructive awareness of communications among accomplices, colleagues, customers, etc. It can also be shown quite directly if an enforcement agent testifies that a defendant was previously told that he or his employer, generally speaking, lacked the "right" license for their activity. We agree with the dissenting justices that many defendants will claim that they lacked the requisite knowledge or intent to be convicted. However, we do not think it follows that witnesses with relevant information or

22

documentary evidence will be so lacking that a fact-finder will be left to take the defendant's word in every case.

## VI. CONCLUSION

Under the TPTA, a "person" who transports 3,000 or more cigarettes without a transporter license required by MCL 205.423(1) is guilty of a felony if he or she is aware of facts that confer transporter status under MCL 205.422(y). Under MCL 205.422(o), it is clear that a "person" includes an "individual." In turn, "an individual" may be a "transporter" subject to the licensing requirement. The Court of Appeals did not err by holding that MCL 205.428(3) can apply to individual, nonsupervisory employees and that the statute provides sufficient notice of the conduct it prohibits. Therefore, we affirm Part II(B) of the judgment of the Court of Appeals.

However, the district court did not consider whether each defendant in this case knew facts that, at a minimum, bestowed transporter status on them. A bindover decision is invalid unless it is supported by evidence as to each element of the charged offense. *Shami*, 501 Mich at 250-251. It is possible that defendants knew of their employer's avoidance of the state's tobacco regulations or that the cigarettes being transported were obtained from out of state or an unlicensed source, but no evidence of such knowledge was presented. Therefore, we reverse Part II(A) of the judgment of the Court of Appeals and grant defendants' joint motion to quash the district court's bindover decision. We do not retain jurisdiction.

<div style="text-align: right">

Elizabeth M. Welch
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement

</div>

23

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                 No. 159371

GERALD MAGNANT,

       Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                 No. 159373

JOHN FRANCIS DAVIS,

       Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in the result*).

I concur in the Court's decision to affirm in part and reverse in part the judgment of the Court of Appeals and quash the district court's bindover decision. However, because the parties agree that the *mens rea* of "knowingly" applies to each element of the offense, I would resolve the matter on that basis and hold that a violation of MCL 205.428(3) requires proof that the actor knew that his or her conduct violated the Tobacco Products Tax Act (the TPTA), MCL 205.421 *et seq*.

As a general rule, courts infer an element of criminal intent when a statute is silent. *Rambin v Allstate Ins Co*, 495 Mich 316, 327; 852 NW2d 34 (2014). This presumption

applies to each element of a statutory crime. *Id.* Whether to infer an element of criminal intent in the absence of explicit legislative direction is not about overriding legislative intent but rather about deciphering it. The United States Supreme Court explained in *Rehaif v United States*, 588 US ___, ___; 139 S Ct 2191, 2195; 204 L Ed 2d 594 (2019):

> In determining Congress' intent, we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding "each of the statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); see also *Morissette v. United States*, 342 U.S. 246, 256-258, 72 S.Ct. 240, 96 L.Ed. 288 (1952). We normally characterize this interpretive maxim as a presumption in favor of "scienter," by which we mean a presumption that criminal statutes require the degree of knowledge sufficient to "mak[e] a person legally responsible for the consequences of his or her act or omission." Black's Law Dictionary 1547 (10th ed. 2014).

The problem we face is what to make of MCL 205.428(3), which reads, in relevant part, "A person who possesses, acquires, transports, or offers for sale contrary to [the TPTA] 3,000 or more cigarettes . . . is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both."

The statute is silent as to *mens rea*, but the parties—and all members of this Court—agree that the statute is not a strict-liability offense. That is, pursuant to the longstanding presumption discussed earlier, a scienter requirement is applied to each element of the offense. I agree with Justice ZAHRA that MCL 205.428(3) contains three elements and that to violate the statute a person must knowingly:

1. Possess, acquire, transport, or offer for sale cigarettes;

2. Do so contrary to the TPTA; and

3. The quantity of cigarettes in question is 3,000 or more.

2

The difficulty is how to apply the scienter presumption to the second element—that the transportation or possession of the cigarettes must be done "contrary to [the TPTA]."[1]

The prosecution argues that the language "contrary to [the TPTA]" is not an element at all but rather "incorporate[s] a regulatory scheme both in the statute itself and any rules the Department of Treasury enacts per statutory authority." Justice ZAHRA disagrees with the prosecution that this language is not an element but sees it as incorporating, in this context, the licensure requirement of the TPTA. So, Justice ZAHRA reads "contrary to [the TPTA]" as, in this context, "without a license." I largely agree with both points of view, with a couple exceptions: I disagree with the prosecution that this language is not an element of the offense, and I disagree with Justice ZAHRA that a proper interpretation of the statute requires substituting language from elsewhere in the TPTA.

However the language "contrary to [the TPTA]" functions, there is no dispute that it is an element of the offense. An "element" of a crime is one of its "constituent part[s]," and "[b]y definition, each 'element' is necessary, and all 'elements' together are sufficient." *People v Bruce*, 504 Mich 555, 564 n 3; 939 NW2d 188 (2019) (quotation marks and citation omitted). The prosecution does not argue that a defendant is guilty of violating MCL 205.428(3) so long as he or she possessed, acquired, transported, or offered

---

[1] Justice VIVIANO focuses only on one narrow way in which MCL 205.428(3) might be violated—functioning as a "transporter" under MCL 205.422(y) without a license to do so under MCL 205.423(1). The focus is understandable because that is the conduct at issue in this case. But the TPTA is an entire regulatory scheme, and MCL 205.428(3), as well as MCL 205.428(4) and MCL 205.428(5), criminalize a much broader range of conduct. The statutory phrase "contrary to this act" incorporates the entire regulatory scheme, and MCL 205.428(5) criminalizes *any* violation. Applying the scienter presumption to this element requires consideration of the entire regulatory scheme, not just the facts of this case.

3

for sale cigarettes and the quantity of cigarettes was 3,000 or more. Those constituent parts are both necessary, but they are not sufficient without more. The prosecution recognizes this and the fact that a person could transport 3,000 or more cigarettes if he or she had the appropriate license. The plain language of MCL 205.428(3) qualifies its prohibition by stating that it provides a penalty when cigarettes are possessed or transported "contrary to [the TPTA]," and in MCL 205.423(1) the TPTA prohibits this conduct unless the person has a license. So, I agree with the prosecution that the language "contrary to [the TPTA]" incorporates the regulatory scheme so that if a person knowingly "possesses, acquires, transports, or offers for sale" "3,000 or more cigarettes" in any way that violates the TPTA, they are guilty of a felony under MCL 205.428(3). Clearly, a violation of the regulatory scheme is a necessary component of this crime, so it is an element of the offense. But, the lack of a license is not the only way in which cigarettes may be possessed, acquired, transported, or offered for sale contrary to the TPTA.

The TPTA also prohibits acquiring for sale a pack of cigarettes that does not have a stamp affixed, MCL 205.426a(3); hindering inspections of places where tobacco products are sold, or hindering inspection of books, records, or other papers required under the TPTA, MCL 205.426a(7); using a game of chance to aid, promote, or induce sales of tobacco products, MCL 205.426(4); and giving tobacco products in connection with a game of chance, MCL 205.426(4). The TPTA is a complicated regulatory scheme, and there are many ways to run afoul of it. While I agree with Justice ZAHRA that the operation of MCL 205.428(3) plugs in a violation from elsewhere in the TPTA, because of the complexity of the regulatory scheme, I do not agree that his reading of the statute achieves the purpose of the scienter presumption.

4

This statute functions much like the statute at issue in *Liparota v United States*, 471 US 419; 105 S Ct 2084; 85 L Ed 2d 434 (1985). In *Liparota*, the federal statute governing food-stamp fraud provided that " 'whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations' " was subject to a fine and imprisonment. *Id.* at 420-421, quoting 7 USC 2024(b)(1), as amended by PL 97-98, § 1324; 95 Stat 1213.[2] The prosecution's reading of the statute in that case was much like the prosecution's reading of MCL 205.428(3) here. Despite the fact that the federal statute included a "knowingly" element, the prosecution argued that a person only had to knowingly "use[], transfer[], acquire[], alter[], or possess[] coupons or authorization cards" but that there was no *mens rea* requirement as to the unlawfulness of the conduct. The United States Supreme Court rejected that reading of the statute. The Court noted that the prosecution's reading would criminalize a broad range of otherwise innocent conduct and further noted:

> "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." [*Liparota*, 471 US at 425-426, quoting *Morissette*, 342 US at 250.]

Logically, that statute functioned in the same manner that MCL 205.428(3) does, in that it incorporated a regulatory scheme. The *Liparota* Court could have employed Justice ZAHRA's approach, and rather than reading the statute to require that a defendant knowingly violate the regulatory scheme, the Court could have only required that the

_____

[2] Admittedly, the federal statute at issue in *Liparota* is distinguishable because its text contained the "knowingly" requirement. But, again, all parties and members of this Court agree that the "knowingly" requirement applies to each element of this offense.

5

defendant knowingly do the act that violated the regulatory scheme. *Liparota* does not address this approach, but it seems to me that such an approach does not address the concern that "an injury can amount to a crime only when inflicted by intention" if the act that violates the regulatory scheme is otherwise innocent.

Reading this statute as a whole, the question is closer here than in *Liparota*, in large part because of the 3,000-cigarette minimum to trigger the felony provision.[3] But the statute, like the statute in *Liparota*, also criminalizes the same range of conduct—any violation of the TPTA—with no minimum requirement for the number of cigarettes as a misdemeanor punishable by not more than one year of imprisonment. MCL 205.428(5). Under Justice ZAHRA's reading, playing cards for cigarettes with a friend would be a misdemeanor, MCL 205.426(4), whether a person realized the conduct violated the TPTA or not.[4]

---

[3] It bears noting that 3,000 cigarettes is the equivalent of 15 cartons of cigarettes. In my opinion, knowing that you are transporting 15 cartons of cigarettes is not a fact that would necessarily alert a reasonable person that they had crossed the line from innocent conduct to conduct punishable by a five-year felony. I agree with Justice ZAHRA that the quantity of cigarettes at issue here, more than 3,000 *cartons*, is not a borderline amount. But in applying the scienter presumption for not just this case but also future cases, the relevant amount is the statutory threshold.

[4] Justice ZAHRA says that this scenario is "highly unlikely" and that discussion of this scenario is "not helpful because it does not appear that the TPTA provides for a license to engage in that conduct." I agree that there is no license for this conduct in the TPTA. The point of the hypothetical is that the TPTA makes a misdemeanor out of this relatively benign conduct under Justice ZAHRA's reading. As to the likelihood of the scenario, I assume Justice ZAHRA means that prosecution of the conduct is unlikely, not that the conduct is unlikely. But the central question of this case is "a commonsense evaluation of the nature of the particular device or substance [the Legislature] has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." *Staples v United States*, 511 US 600, 619; 114 S Ct 1793; 128 L Ed 2d 608 (1994). If we find ourselves saying that prosecution of such conduct is "highly unlikely," then it

6

This question is close, and it is difficult because, like so many similar cases, the central reasoning "depends upon a commonsense evaluation of the nature of the particular device or substance [the Legislature] has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items." *Staples v United States*, 511 US 600, 619; 114 S Ct 1793; 128 L Ed 2d 608 (1994). I do not believe resort to the rule of lenity is required here, but at least there are both "circumstances of an ambiguity" as well as an "absence of any firm indication of legislative intent." *People v Wakeford*, 418 Mich 95, 113-114; 341 NW2d 68 (1983). In that case, it seems appropriate to apply the principle that " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " *Liparota*, 471 US at 427, quoting *Rewis v United States*, 401 US 808, 812; 91 S Ct 1056; 28 L Ed 2d 493 (1971).

Lastly, I am aware of the maxim that "ignorance of the law is no excuse." That idea is difficult to apply when the Legislature incorporates by reference an entire regulatory scheme into a criminal statute without providing clarity as to how the *mens rea* of the offense should function. But that maxim is not absolute; ignorance of the law is not a defense except when the Legislature says it is. The Legislature has said so in terms of this statute, and this can be squared with my resolution of this case as it was in *Rehaif*:

> This maxim, however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be "unaware of the existence of a statute proscribing his conduct." 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(a), p 575 (1986). In contrast, the maxim does not normally apply where a defendant "has a mistaken impression concerning the legal effect of some collateral matter and that

---

seems we have revealed "the expectations that individuals may legitimately have in dealing with the regulated items."

7

mistake results in his misunderstanding the full significance of his conduct," thereby negating an element of the offense. *Ibid.*; see also Model Penal Code § 2.04, at 27 (a mistake of law is a defense if the mistake negates the "knowledge . . . required to establish a material element of the offense"). Much of the confusion surrounding the ignorance-of-the-law maxim stems from "the failure to distinguish [these] two quite different situations." LaFave, Substantive Criminal Law § 5.1(d), at 585. [*Rehaif*, 588 US at ___; 139 S Ct at 2198.]

Accordingly, I concur in the majority's result.

Megan K. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 159371

GERALD MAGNANT,

      Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 159373

JOHN FRANCIS DAVIS

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

      I dissent from the Court's decision to reverse Part II(A) of the judgment of the Court of Appeals and quash the district court's bindover decision.  Michigan State Police stopped defendants in a pickup truck towing a utility trailer found to contain 672,000 untaxed

cigarettes.[1]  This conduct alone constitutes prima facie[2] evidence that could sustain a jury

verdict on several charges brought under the Tobacco Products Tax Act, MCL 205.421 *et*

*seq*. (the TPTA), including the offense charged in this case under MCL 205.428(3).  I

would affirm the Court of Appeals' decision and remand to the circuit court for further

proceedings.

The TPTA is comprehensive and contains a subsection providing, in relevant part,

that "[a] person who possesses, acquires, transports, or offers for sale contrary to [the

TPTA] 3,000 or more cigarettes . . . is guilty of a felony, punishable by a fine of not more

than $50,000.00 or imprisonment for not more than 5 years, or both."[3]  The prosecution

concedes that a person must "knowingly" violate this subsection.  This "knowingly"

requirement, pursuant to *Rambin v Allstate Ins Co*,[4] applies to each element of a statutory

crime.[5]  Under a *Rambin* framework, MCL 205.428(3) contains three general elements.

The defendant must knowingly:

> 1.  Possess or transport cigarettes;

---

[1] The Legislature has underscored that "[i]t is the intent of [the TPTA] to impose the tax
levied under this act upon the consumer of the tobacco products by requiring the consumer
to pay the tax at the specified rate."  MCL 205.427a.

[2] "Sufficient to establish a fact or raise a presumption unless disproved or rebutted; based
on what seems to be true on first examination, even though it may later be proved to be
untrue <a prima facie showing>."  *Black's Law Dictionary* (11th ed).

[3] MCL 205.428(3).

[4] *Rambin v Allstate Ins Co*, 495 Mich 316; 852 NW2d 34 (2014).

[5] *Id*. at 327-328.

2. Do so contrary to the TPTA; and

3. Possess or transport 3,000 or more cigarettes.

The parties disagree on the meaning of the second element, "contrary to [the TPTA]." The prosecution initially questions whether "contrary to [the TPTA]" is an actual element of the statutory crime. The prosecution maintains that this language is a statement placed within every subsection of MCL 205.428 that prohibits the possession, transportation, or sale of untaxed cigarettes and merely incorporates all the TPTA's provisions. Contrary to the prosecution's position, I conclude that the statutory language "contrary to [the TPTA]" has some meaning other than legal boilerplate; it is, in fact, an element of the crime.

In my view, this "contrary to [the TPTA]" language has purpose. Given that language, in addition to proving the first and third express elements of MCL 205.428(3), the prosecution must also prove that the defendant was acting contrary to a separate provision of the TPTA. In this case, the parties identified such a provision under the TPTA that provides for various licenses,[6] some of which, if acquired, would "authorize[] [a person] to do some act or series of acts that would otherwise be impermissible."[7] Indeed, the prosecution acknowledged this provision as an element of the charged statutory offense when filing charges against defendants for committing the statutory offense *without a license*.

---

[6] MCL 205.423(1) to (3).

[7] See *Black's Law Dictionary* (11th ed) (defining "license").

3

I view the "contrary to [the TPTA]" language in MCL 205.428(3) as referring to a license. Accordingly, I would submit that the distinct elements of this offense are that the defendant must knowingly:

1. Possess or transport cigarettes;

2. Without a license;

3. In a quantity of 3,000 or more.

Like the majority, I, too, would not wade into the "dangers posed by overreliance on the general-intent/specific-intent distinction." Rather, I would focus on the term "knowingly" itself. In *Bryan v United States*,[8] the United States Supreme Court discussed this term at length and made clear that

> the term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." Thus, in *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), we held that the prosecution fulfills its burden of proving a knowing violation of the escape statute "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id*., at 408, 110 S.Ct., at 634. And in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), we held that a charge that the defendant's possession of an unregistered machinegun was unlawful required proof "that he knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *Id*., at 602, 114 S.Ct., at 1795. It was not, however, necessary to prove that the defendant knew that his possession was unlawful. See *Rogers v. United States*, 522 U.S. 252, 254–255, 118 S.Ct. 673, 674–676, 139 L.Ed.2d 686 (1998) (plurality opinion). Thus, unless the text of the statute dictates a different

---

[8] *Bryan v United States*, 524 US 184; 118 S Ct 1939; 141 L Ed 2d 197 (1998).

4

result, the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.[9]

Both defendants argue that "MCL 205.428(3) requires proof that [each] knew that he was transporting cigarettes in a manner 'contrary to' the TPTA, i.e., that he had knowledge that he was required to obtain a transporter license (but did not do so)."[10] However, as *Bryan* makes clear, "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law."[11] Rather, the "term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."[12]

---

[9] *Bryan*, 524 US at 192-193. Internal footnotes were removed from the above quoted text, although I believe that footnote 14 is helpful enough to republish in this note:

> In his opinion dissenting from the Court's decision upholding the constitutionality of a statute authorizing punishment for the knowing violation of an Interstate Commerce regulation, Justice Jackson wrote:
>
> "It is further suggested that a defendant is protected against indefiniteness because conviction is authorized only for knowing violations. The argument seems to be that the jury can find that defendant knowingly violated the regulation only if it finds that it knew the meaning of the regulation he was accused of violating. With the exception of *Screws v. United States*, 325 U.S. 91[; 65 S Ct 1031; 89 L Ed 1495 (1945)], which rests on a very particularized basis, the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law. I do not suppose the Court intends to suggest that if petitioner knew nothing of the existence of such a regulation its ignorance would constitute a defense." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 345, 72 S.Ct. 329, 333, 96 L.Ed. 367 (1952) [(Jackson, J., dissenting)].

[10] Formatting and capitalization altered.

[11] *Bryan*, 524 US at 192.

[12] *Id*. at 193.

In my view, defendants' "argument seems to be that the jury can find that defendant[s] knowingly violated the [statute] only if it finds that [they] knew the meaning of the [statute] [they were] accused of violating."[13] Defendants' interpretation runs afoul of the long-accepted jurisprudential meaning of "knowingly." The only "fact" of which a person must be aware in regard to the second element of this statutory offense is whether they "knowingly" were without a license.[14]

---

[13] *Boyce Motor Lines, Inc*, 342 US at 345 (Jackson, J., dissenting).

[14] In her concurrence, Justice CAVANAGH implies that my analysis of this element is narrow. She writes that under my reading, friends playing cards for cigarettes could be a misdemeanor, MCL 205.426(4), whether a person realized the conduct violated the TPTA or not. Of course, this is a highly unlikely scenario, discussion of which is not helpful because it does not appear that the TPTA provides for a license to engage in that conduct.

I also find unhelpful that Justice CAVANAGH "bears noting that 3,000 cigarettes is the equivalent of 15 cartons of cigarettes" when this case involves well over 3,000 cartons of cigarettes. And while it might be argued that "knowing that you are transporting 15 cartons of cigarettes is not a fact that would necessarily alert a reasonable person that they had crossed the line from innocent conduct to conduct punishable by a five-year felony," this argument is not very persuasive when considering that those 15 cartons of cigarettes are all ostensibly untaxed. I submit that very few innocent persons, if any, have knowingly possessed or transported, knowingly over 15 cartons of untaxed cigarettes without knowingly having proper licensure.

Moreover, my reading of the element does provide a significant defense for any defendant who does possess a validly obtained license by allowing them to maintain that they did not know that their license was invalid for any of a host of reasons. This is a compelling defense in a highly regulatory regime. However, as discussed later in this opinion, I do not believe that a defendant who has never possessed a valid license may present this defense.

Justice VIVIANO's dissent agrees that the majority properly states the second element of the offense, although he would not require the prosecution to establish that defendants were aware of this element. Yet, I do not find Justice VIVIANO's position on the elements of this offense much different than the majority's interpretation of MCL

6

But the majority accepts defendants' invitation to reinvent MCL 205.428(3) and does just that by interpreting the second element to require that defendants must "[know] of facts that conferred 'transporter' status or [know] of the specific licensing requirement of MCL 205.423(1)." The TPTA does indeed provide that "[a]s used in [the TPTA],"

> "[t]ransporter" means a person importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under [the TPTA]. Transporter does not include an interstate commerce carrier licensed by the interstate commerce commission to carry commodities in interstate

---

205.428(3). In sum, their positions both turn on whether a statutorily defined "transporter" has violated the TPTA. This approach is flawed because the statute expressly provides that no "person" may possess or transport untaxed cigarettes notwithstanding the statutorily defined license to legally operate as a "transporter." There is no such thing as an unlicensed "transporter" under the TPTA, so no legal basis provides for an unlicensed person to claim that "(a) the tobacco is obtained from an out-of-state source or from a source not duly licensed under the TPTA, and (b) the individual is not licensed by the Interstate Commerce Commission (the ICC) or an out-of-state operator of a business or warehouse licensed under the TPTA. MCL 205.422(y); MCL 205.423(1)." In this sense, both the majority's and Justice VIVIANO's positions are misguided for additional reasons discussed later in this opinion.

Justice VIVIANO seeks to distinguish his position from the majority by maintaining that the prosecution need not prove that a defendant intended to commit this element. And perhaps his contention in theory might lessen the majority's effective blockade to enforcing MCL 205.428(3). Yet, even without requiring any *mens rea* aspect to the element, I still believe it nearly impossible for the prosecution to establish that "(a) the tobacco [was] obtained from an out-of-state source or from a source not duly licensed under the TPTA, and (b) the individual is not licensed by the Interstate Commerce Commission (the ICC) or an out-of-state operator of a business or warehouse licensed under the TPTA. MCL 205.422(y); MCL 205.423(1)." In this case, the troopers did not actually witness defendants loading the trailer with untaxed cigarettes, so the proofs would be insufficient for failure to establish the "source" of the cigarettes. Further, Justice VIVIANO's strict-liability approach to the element would deprive any defendant who does possess a validly obtained license of a significant defense by precluding argument that they did not know their license had become invalid for any of a host of legitimate reasons.

7

commerce, or a licensee maintaining a warehouse or place of business outside of this state if the warehouse or place of business is licensed under [the TPTA].[15]

This provision, however, in no way creates a status on its own, as the majority opinion suggests. By its plain terms, this provision describes conduct in which a person who has a transporter license may lawfully engage. Obviously, if a person acquires a transporter license, that person may act as a transporter and lawfully engage in the "importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under [the TPTA]." But a person who has never sought a transporter license does not spontaneously become a "transporter" by engaging in this described conduct, which, as previously explained, is unlawful without having first acquired a license. After all, a person does not become married merely by filing a joint tax return, just as a person does not become a lawyer, doctor, veterinarian, certified public accountant, etc., by conducting themselves as the like. Rather, those are persons criminally liable for engaging in the unauthorized practice of those licensed professions.

The flaw in the majority's "status" argument is also revealed by the very case on which the majority heavily relies to support its construction of the second element. In *Rehaif v United States*,[16] the petitioner attended a university on a nonimmigrant student visa and was expelled for poor grades. Apparently, he was told that his immigration status would be terminated unless he enrolled in a different university or left the country. After

---

[15] MCL 205.422(y).

[16] *Rehaif v United States*, 588 US ___; 139 S Ct 2191; 204 L Ed 2d 594 (2019).

8

his immigration status was terminated, the petitioner was arrested for possessing firearms as an undocumented immigrant. The key question was whether the prosecution was required to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."[17] The Court concluded that the prosecution must show both knowledge of possession and knowledge of his relevant immigration status.[18]

But had the petitioner in that case never acquired any immigration status, the Court would have lacked any basis to construe "status [as] the 'crucial element' separating innocent from wrongful conduct," because the petitioner could not have claimed *any* status that would render his conduct innocent.[19] The same is true in this case. Had defendants actually acquired a transporter license, perhaps the majority's opinion could reasonably embrace an argument that they had "a mistaken impression concerning the legal effect of some collateral matter and that mistake results in [their] misunderstanding the full significance of [their] conduct, thereby negating an element of the offense."[20] But because defendants never sought or acquired a license, the majority's argument lacks the requisite legal foundation to draw a comparison between the instant case and *Rehaif*.

Further, the majority improperly construes the phrase "contrary to" as requiring the prosecution to establish that defendants knew of "status" facts that would apparently

---

[17] *Id*. at ___; 139 S Ct at 2194.

[18] *Id*. at ___; 139 S Ct at 2194.

[19] *Id*. at ___; 139 S Ct at 2197 (citation omitted).

[20] *Id*. at ___; 139 S Ct at 2198 (quotation marks and citation omitted).

prompt a person to be aware that a transporter license is required. Specifically, the majority requires that the prosecution prove beyond a reasonable doubt not only that the accused person knowingly possessed or transported over 3,000 cigarettes but also that this "person is aware that the cigarettes were obtained from an out-of-state source or from a source not duly licensed under the TPTA." But these two so-called "status" facts are, in fact, provisions of law that the majority incorporates from the legal description of a "transporter" provided under the TPTA. The inescapable conclusion is that the majority requires that an accused person know the law and engage in conduct knowing it to be unlawful. In other words, the majority requires the prosecution to establish, in regard to the second element, a "willful" violation of MCL 205.428(3). Nothing in the text of MCL 205.428(3) or any common-law presumption of criminal *mens rea* justifies this conclusion. Indeed, the majority's opinion is inconsistent with the Court's decision in *Rambin*, which presumes the same *mens rea* for each element of the offense.

Moreover, how the prosecution can ever establish beyond a reasonable doubt that defendants were "aware that the cigarettes were obtained from an out-of-state source or from a source not duly licensed under the TPTA" is a mystery. The majority makes great efforts to dispel the notion that its holding is not inconsistent with the well-known maxim that "ignorance of the law is no excuse," but the opinion only incentivizes another well-known idiom: "Ignorance is bliss." Simply stated, someone who actually does intend to violate the TPTA would not admit to being "aware that the cigarettes were obtained from an out-of-state source or from a source not duly licensed under the TPTA." And someone who is interested in complying with the TPTA would glean from the majority's opinion that they are better off not being aware of the origin of the untaxed cigarettes. As in this

10

case, any person's ideal "status" to avoid criminal liability for smuggling cigarettes is to say, "I'm just a worker." The majority's opinion renders the TPTA not just confusing but also largely unenforceable. Accordingly, I would affirm the Court of Appeals' decision and remand this case to the circuit court for further proceedings.

Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                No. 159371

GERALD MAGNANT,

        Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                No. 159373

JOHN FRANCIS DAVIS,

        Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

I agree with the majority's construction of the elements of MCL 205.428(3) and that this statutory crime is not a strict-liability offense. I disagree, however, that a *mens rea* requirement attaches to the disputed element requiring a license to transport cigarettes in certain circumstances. For the reasons that follow, I dissent.

Defendants were charged with violating the Tobacco Products Tax Act (the TPTA), MCL 205.421 *et seq*. Specifically, the criminal information asserted that defendants "did possess, acquire, transport, or offer for sale 3,000 or more cigarettes, in the State of

Michigan, without obtaining/possessing a Michigan Tobacco license as required by MCL

205.423; contrary to MCL 205.428(3)." The latter statute provides the relevant elements

of the offense and the penalty:

> A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes . . . is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both. [MCL 205.428(3).]

Here, the prosecution alleged that defendants' conduct was "contrary to this act" because

they did not have a license, as required by MCL 205.423(1).[1] That statute provides, in

pertinent part, that "a person shall not purchase, possess, acquire for resale, or sell a tobacco

product as a . . . transporter in this state unless licensed to do so." Finally, "transporter" is

defined as

> a person importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside this state, or from any person not duly licensed under this act. Transporter does not include an interstate commerce carrier licensed by the interstate commerce commission to carry commodities in interstate commerce, or a licensee maintaining a warehouse or place of business outside of this state if the warehouse or place of business is licensed under this act. [MCL 205.422(y).]

As the majority concludes, the definition of "transporter" must be an element of the

offense as charged. If the definition is not met, then no license is required to transport

---

[1] Justice CAVANAGH states that my interpretation narrowly focuses on the crime as charged and therefore overlooks the fact that there are many ways for a defendant to violate the act. We are, of course, limited to interpreting the crime as charged. Here the relevant element is somewhat unique in that it simply incorporates whatever portion of the act the defendant is charged in the information with violating. So it is necessarily the case that the content of that element will change when a defendant is charged with violating a different section of the act. Therefore, while the same analytical framework will apply, our conclusion on whether there is a *mens rea* requirement may differ as well.

2

cigarettes. And because that definition is limited to certain circumstances—specifically here, obtaining tobacco products from out-of-state sources or from individuals not licensed under the TPTA—it is possible a person might transport these products without needing a license. In the present case, for instance, if the cigarettes were obtained in Michigan from a duly licensed person, then a defendant transporting them would not be a "transporter" under MCL 205.422(y). And if a person is not a "transporter," then *ipso facto* he or she has not possessed the cigarettes without a license "as a . . . transporter" under MCL 205.423(1). In those circumstances, the individual has not acted "contrary to this act" under MCL 205.428(3) and could not be convicted of the charge here. Thus, the prosecution must prove that each defendant was a "transporter" as defined by the statute.

The dispositive issue is whether the statute and all its elements require a showing of criminal intent. "[T]o determine whether a statute imposes strict liability or requires proof of a guilty mind, the Court first searches for an explicit expression of intent in the statute itself." *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005), citing *People v Quinn*, 440 Mich 178, 185; 487 NW2d 194 (1992). The Legislature did not include an express *mens rea* element in the statute creating this offense.[2] But "[s]tatutes that create strict liability for all their elements are not favored." *Tombs*, 472 Mich at 451, citing *Quinn*, 440

---

[2] For this reason, *Rehaif v United States*, 588 US ___; 139 S Ct 2191; 204 L Ed 2d 594 (2019), a case on which the majority heavily relies, is readily distinguishable. In *Rehaif*, the statute creating the offense contained an express *mens rea* requirement. *Id*. at ___; 139 S Ct at 2195-2196, citing 18 USC 924(a)(2). The Court explained that the term "knowingly" introduced the list of elements and that, as an ordinary matter of grammar, that term applied to all the elements. *Id*. at ___; 139 S Ct at 2195-2196. As noted, the statute at issue in the present case does not include any express *mens rea* requirement, let alone one that grammatically applies to each element.

Mich at 187. "Hence, we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated." *Tombs*, 472 Mich at 451.

Various factors are considered in determining whether *mens rea* attaches to a statute. See *Quinn*, 440 Mich at 190 n 14. The one I find dispositive here is the severity of the punishment provided for by the statute. See, e.g., *Staples v United States*, 511 US 600, 618; 114 S Ct 1793; 128 L Ed 2d 608 (1994) (explaining that a severe punishment, in particular a felony, "is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement").[3] The gun offense in *Staples* was a felony punishable by up to 10 years in prison, which confirmed the Court's reading that the statute included a *mens rea* requirement. *Id*. at 616. The offense here is a felony punishable by a fine of not more than $50,000 or imprisonment for not more than 5 years, or both. MCL 205.428(3). Although the *Staples* Court was careful to clarify that felonies do not categorically require a *mens rea* element—and the carceral punishment here is only half as long as the punishment in *Staples*—I agree with the majority that the Legislature did not intend to create a strict-liability crime.

I cannot, however, follow the majority's next step and conclude that, because the offense is not one of strict liability, all its elements must contain an intent requirement. It

_____

[3] The other factors include the statute's history and title, other statutes, the severity of the harm posed to the public by the proscribed acts, "the opportunity to ascertain the true facts," and "the difficulty encountered by prosecuting officials in proving a mental state." *Quinn*, 440 Mich at 190 n 14. As will be discussed, this is a regulatory taxing statute with licensure requirements, not the sort of common-law crime that has traditionally required *mens rea*. And, somewhat oddly, the Legislature has included an express *mens rea* requirement for a lesser offense in this very statutory section, MCL 205.428(11). These other factors, standing alone, would not support a *mens rea* requirement.

4

is normally true that the "presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime." *Rambin v Allstate Ins Co*, 495 Mich 316, 327-328; 852 NW2d 34 (2014), citing *Tombs*, 472 Mich at 454-455. The presumption, however, does not always control. Certain "statute[s] require[] a criminal mind for some but not all of [the] elements . . . ." *Quinn*, 440 Mich at 187. In such cases, the statute "is not one of strict liability." *Id*. In *Quinn*, the Court interpreted MCL 750.227c, which sets forth the offense of transporting or possessing a loaded firearm other than a pistol. The Court determined that "the Legislature intended to hold a person liable for knowing transportation of a firearm that is in fact loaded, irrespective of whether the individual actually knew the fact that it is his duty to ascertain." *Id*. at 194. *United States v Freed*, 401 US 601; 91 S Ct 1112; 28 L Ed 2d 356 (1971), provides another example. Justice Brennan explained in his concurrence that the government must prove three material elements: "(1) that appellees possessed certain items; (2) that the items possessed were hand grenades; and (3) that the hand grenades were not registered." *Id*. at 612 (Brennan, J., concurring in the judgment). And while the Court held that "no intent at all need be proved in regard to one element of the offense—the unregistered status of the grenades— knowledge must still be proved as to the other two elements," so it is not a crime of strict liability. *Id*.[4]

---

[4] See also *Staples*, 511 US at 609 (recognizing that "different elements of the same offense can require different mental states"). Another example is the recently enacted MCL 8.9, which expressly contemplates that courts will sometimes determine that certain elements impose strict liability while others have a *mens rea* requirement. MCL 8.9 does not apply to the offense here because the offense occurred before the statute's effective date.

I would conclude that the presumption in favor of applying a *mens rea* requirement to each element has been overcome and that the Legislature did not intend to require knowledge of the attendant circumstances set forth in the definition of transporter, i.e., whether the tobacco is obtained from an out-of-state or unlicensed source. MCL 205.422(y). As an initial matter, the licensure requirement at the heart of the definition of "transporter" is a far cry from the sorts of criminal conduct that traditionally have been found to require *mens rea*. Indeed, we have found that a similar licensure requirement was not even an element of a statutory offense. See *People v Henderson*, 391 Mich 612, 616; 218 NW2d 2 (1974).[5]

---

[5] In *Henderson*, we read the licensure requirement as simply acknowledging that a person may be authorized to do an act that would otherwise be illegal. *Henderson*, 391 Mich at 616. We explained, in relevant part:

> We are satisfied that the operative words of the statute as they pertain to this defendant are:
>
> > "* * * any person who shall carry a pistol * * * in any vehicle operated or occupied by him * * * shall be guilty of a felony."
>
> The language in the statute "without a license to so carry said pistol as provided by law" does not add an element to the crime, but simply acknowledges that a person may be authorized so to carry a pistol. This is of the essence of a license.
>
> A license is the permission by competent authority to do an act which, without such permission, would be illegal. [*Id*.]

The difference in this case is that transportation of cigarettes is an act that is ordinarily legal. A license is required only if certain attendant circumstances exist. In addition, our conclusion in *Henderson* was bolstered by an additional statute that placed on the defendant the burden of proving exceptions to the offense, such as having the appropriate license. *Id*. at 616-617, citing MCL 776.20. No such statute exists for the offense here. For these reasons, I conclude that licensure is an element here. Nonetheless, I believe that *Henderson*

6

Further, as the United States Supreme Court has explained, the surest indicator that criminal intent is required is when the statute codifies a common-law crime. In holding that a federal conversion statute silent on intent nonetheless required a showing of *mens rea*, the Court explained that "[c]ongressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act." *Morissette v United States*, 342 US 246, 262; 72 S Ct 240; 96 L Ed 288 (1952). The conversion offense fell into the former category, and the Court found no grounds to infer an instruction from Congress to eliminate intent from the crime. *Id*. at 273.

By contrast, regulatory tax statutes containing criminal offenses without any common-law antecedents have been found not to require *mens rea*. One such statute was at issue in *United States v Balint*, 258 US 250, 253; 42 S Ct 301; 66 L Ed 604 (1922). The Court noted that the emphasis of the narcotics act at issue was "in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic." *Id*. at 254. Individuals dealing in those drugs were not, the Court held, required to know that the drugs were regulated. *Id*. "Doubtless considerations as to the opportunity of the seller to find

provides some support for my conclusion that licensing requirements are not traditional elements that require *mens rea*.

7

out the fact and the difficulty of proof of knowledge contributed to this conclusion," the Court concluded. *Id.*

I believe that the court's analysis in *United States v Carlos-Colmenares*, 253 F3d 276 (CA 7, 2001), which examined an element similar to the one at issue here, is instructive. In that case, "[t]he defendant pleaded guilty to the crime of having been found in the United States, without the express consent of the Attorney General to be here, after having been deported . . . . 8 U.S.C. § 1326(a)(2)." *Id*. at 277. The court held that intent to reenter the country is an element but that intent to reenter without the Attorney General's permission is not. *Id*. at 278. "Nothing in the statute's language or background suggests that an illegally returning deportee cannot be convicted unless he knew he lacked the Attorney General's express consent to reenter." *Id*. The court noted that nine other circuits had considered the issue and unanimously reached the same conclusion. It continued to reject defendant's argument that this interpretation created a strict-liability crime, explaining: "Liability would be strict if the returning alien could be punished even if he had been returned involuntarily. What is at issue is whether the government, in addition to having to prove that the alien was deported and knowingly returned and did not have the express consent of the Attorney General to return, must prove that he *knew* he didn't have that consent, or, alternatively, whether the alien may try to prove that he didn't know." *Id*. at 279. The court explained that the crime at issue was more of a regulatory offense:

> "Regulatory" offenses are those that arise out of *optional* activities, such as having sex with very young women (who may be minors), or engaging in business activities that can cause great harm (such as the manufacture of foods or drugs)—or coming back to the United States after having been deported. The risk of violating a statute that regulates an optional activity can be eliminated simply by not engaging in the regulated activity. A person

8

who has been deported from the United States can avoid any risk of violating 8 U.S.C. § 1326 just by not returning to the United States; he knows he is not welcome. If nevertheless he decides to return, he had better make sure he has the Attorney General's express consent. [*Id*. at 279-280.]

In this case, the lack of an intent requirement for the "transporter" element does not make MCL 205.428(3) a strict-liability offense because, as stated by the majority, the statute requires knowledge of the possession of the cigarettes and the quantity of the cigarettes. See *Quinn*, 440 Mich at 187. A strict-liability offense would allow convictions even if a defendant had no knowledge that there were cigarettes in his trailer at all. Cf. *Carlos-Colmenares*, 253 F3d at 279.[6] Given that this offense was not a common-law crime, there is no well-defined analogous offense from which we might infer a *mens rea* requirement. See *Morissette*, 342 US at 262. Instead, this is a case in which the Legislature "creat[ed] an offense new to general law, for whose definition the courts have no guidance except the Act." *Id*. It is a licensing offense. As the majority notes, the Legislature enacted the TPTA "to provide for a tax upon the sale and distribution of tobacco products; to regulate and license manufacturers, wholesalers, secondary wholesalers, vending machine operators, unclassified acquirers, transportation companies, transporters, and retailers of tobacco products; . . . [and] to prescribe penalties and provide remedies for the violation of this act[.]" 1993 PA 327, title; see also MCL 205.427a ("It is the intent of this act to impose

---

[6] And even if the Legislature did intend that an intent requirement attach to this element, there is no evidence that the Legislature intended the heightened *mens rea* requirement adopted by the majority. See *Rehaif*, 588 US at ___; 139 S Ct at 2212 (Alito, J., dissenting) ("And if Congress wanted to require proof of *some mens rea* with respect to the categories in [the statute], there is absolutely no reason to suppose that it wanted to impose one of the highest degrees of *mens rea*—actual knowledge. Why not require reason to know or recklessness or negligence? To this question, neither petitioner nor the majority has any answer.").

9

the tax levied under this act upon the consumer of the tobacco products by requiring the consumer to pay the tax at the specified rate.").

Moreover, the TPTA is primarily a "taxing act" like the one at issue in *Balint*. Here, as in *Balint*, the emphasis on the statute is the supervision of the regulated industry, and the criminal penalties are used as adjuncts to give the regulations teeth. The TPTA taxes and regulates tobacco products, and the Legislature created criminal penalties as a means of enforcement. In holding that the prosecution did not need to prove that the defendant knew that the drugs he sold were "narcotics" within the ambit of the statute, the *Balint* Court also noted that Congress doubtless gave consideration to "the opportunity of the seller to find out the fact and the difficulty of proof of knowledge . . . ." *Balint*, 258 US at 254. This rationale applies to the TPTA, too. People wishing to transport a large quantity of cigarettes or to engage in any other activity regulated by the TPTA have a similar opportunity to assess whether they meet the statutory definition of "transporter."

Moreover, as the court in *Carlos-Colmenares* observed, "[t]he risk of violating a statute that regulates an optional activity can be eliminated simply by not engaging in the regulated activity." *Carlos-Colmenares*, 253 F3d at 279. A person can avoid any risk of violating the TPTA by staying out of the tobacco business altogether. As the majority recognizes, "A reasonable person would expect to be subject to regulation when transporting 3,000 or more cigarettes across state lines or from an unlicensed source." If a person decides to transport or sell a large quantity of cigarettes, he had better make sure he is familiar with the regulations.

The difficulty of proving that a defendant knew that the tobacco was obtained from an out-of-state or unlicensed source also supports my conclusion that proving knowledge

10

is not required. See note 3 of this opinion (noting that under *Staples*, the difficulty of proof is a consideration in determining whether a crime imposes strict liability). Proving knowledge of these circumstances would be just as challenging as it was in *Balint*, which relied on this factor to find that the statute contained no *mens rea* requirement. It is the type of case in which "requiring the prosecutor to prove knowledge would frustrate the regulatory purposes of the statute." *Quinn*, 440 Mich at 189. See also 1 LaFave, Substantive Criminal Law (3d ed, October 2020 update), § 5.5(a) ("The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced."). Although not impossible, proving that a defendant knew the tobacco was obtained from a source located outside this state would be difficult. MCL 205.422(y). And it would be nearly impossible for the prosecution to prove that a defendant knew he or she was transporting a tobacco product from a person not duly licensed under the TPTA. These considerations lend weight to the conclusion that the Legislature did not intend to require *mens rea* as to the transporter element.

In sum, while I agree with the majority that the definition of transporter is an element of the offense charged in this case, I would hold that MCL 205.428(3) does not require the prosecution to prove knowledge of the circumstances that make a person a "transporter." MCL 205.428(3) contains no express *mens rea* requirement and is not a codification of any common-law offense to which a *mens rea* requirement would normally attach. It is, instead, a regulatory tax statute, and when regulated persons or entities fail to comply with that type of statute, they usually do so at their own peril. And although the offense, as a

11

whole, is not one of strict liability, the transporter element is regulatory in nature, and requiring the prosecution to prove knowledge with regard to this element would be nearly impossible.  For these reasons, I respectfully dissent.

David F. Viviano